EBASCO SERVICES, INC., et al. v. HARRIS

No. 39951 March 5, 1956 85 So. 2d 784

*Young & Daniel,* Jackson, for appellants.

*George T. McClintock, Barnett, Jones & Montgomery,* Jackson, for appellee.

HOLMES, J.

This appeal involves a claim for compensation benefits under the Mississippi Workmen's Compensation Law asserted by the appellee against his employer, Ebasco Services, Inc., and its insurance carrier, Travelers Insurance Company, who are the appellants here.

The claim arises out of injuries which the appellee sustained on August 26, 1952, while employed by the Ebasco Services, Inc., at Cleveland, Mississippi, when he was struck in the lumbar region of the back by a concrete pipe resulting in fractures in three transverse processes of the lumbar vertebrae. It was stipulated by the parties that the appellee's injuries arose out of and in the course of his employment and that his average weekly wage was $96.00. He was paid compensation at the rate of $25.00 per week from the date of injury to April 6, 1954, on which latter date he reached maximum recovery from medical treatment. The claim here in-

volved is for compensation benefits for permanent partial disability from April 6, 1954, and continuing throughout the period of such disability, subject to the limitations of the Act.

After a full hearing before the attorney-referee, he found that the appellee had suffered a twenty-five percent loss of earning capacity and that on the basis of his average weekly wage of $96.00, he was entitled, under Section 8(c)(21) of the Act as amended, to compensation for permanent partial disability at the rate of $16.00 per week from April 6, 1954, and continuing throughout the period of such disability, but for no longer period than 450 weeks.

On a review by the full Commission, the findings and order of the attorney-referee were, by a majority vote of the Commission, modified so as to fix the appellee's loss of earning capacity at fifteen percent and his rate of compensation at $9.60 per week, and this notwithstanding the provisions of Section 6 (b), Chapter 412 of the Laws of 1950, Section 6998-07, Code of 1942, fixing the minimum compensation at $10.00 per week.

On appeal to the circuit court, the order of the Commission was reversed and the award of the attorney-referee was reinstated, and from this judgment of the circuit court the appellant prosecutes this appeal.

The proof for the appellee showed that at the time of the hearing he was 43 years of age and was married and had two children; that prior to his injury he was by trade a construction steel worker and had been for about 25 years, and was capable of earning from $100.00 to $250.00 per week; that his work as a construction steel worker required him to do climbing, wearing a heavy rigging belt with wrenches; that he was required to lift at times objects weighing from 75 to 150 pounds; that some of his work was performed 300 feet above ground; that mobility of the lumbar region of his back was required in the performance of his duties; that following

his injury, he was hospitalized at Cleveland, Mississippi for about two weeks under the care and treatment of Dr. Milam, a local physician; that thereafter he went to his home in Mamou, Louisiana, where he came under the care and treatment of Dr. Frank P. Savoy, Jr.; that Dr. Savoy made X-rays of his injuries and treated him and later referred him to Dr. Charles V. Hatchett, an orthopedic surgeon in Lake Charles, Louisiana; that he was hospitalized in Lake Charles for about eleven days and put in traction; that a chair type rigid brace, which he wore at all times except at night, was prescribed for him by Dr. Hatchett; that Dr. Savoy examined him on October 6, 1952, November 26, 1952, and in October, 1953, and saw him on several occasions thereafter and treated him in the meantime; that in the opinion of Dr. Savoy, scar tissue had formed which tended to decrease the mobility of the back and that most of the appellee's disability was due to the scarring incurred by the injuries; that in the opinion of Dr. Savoy, the appellee had some permanent disability of his back and he estimated this to be a fifty percent disability for the type of work he had been performing; that after appellee's injuries he was unable to work in the same employment or otherwise without suffering pain and exhaustion; that he had had some experience in plumbing work and tried to perform work of this nature after his injury but was unable to do so without the aid of helpers, which prevented him from deriving any appreciable earnings for his efforts; that he could do no heavy lifting or strenuous bending after his injury; that he did some light work in his garden and could do some lifting of light objects with the aid of helpers, but he was prevented from performing any labor of a strenuous nature; that between the date of his injury and the date of the hearing, a priod of nearly two years, he had been able to earn only about $250.00; that following his injury his weight had reduced from about 175 pounds to about 150 pounds.

The appellants introduced as witnesses Ralph Day and Gene P. Wilson, and Drs. Hatchett and Blake. Day and Wilson were employees of Pendleton Detectives, Inc., which agency had been employed by the insurance carrier to place the appellee under surveillance as to his movements after the injury. These two agents testified that they went to Mamou, Louisiana, and observed the appellee at times from a distance of a block or a block and a half and took moving pictures of him which revealed him bending up and down picking vegetables, and in a standing and squatting position, and carrying a bucket with vegetables, bending over a work table working with wood, bending over to the ground and using various tools, walking in the yard and carrying a box in his right hand, carrying a table on his back and pulling a light wagon. It was not denied by the appellee that he did some light work in his garden and that he lifted some light objects with the aid of others, but he claimed he was unable to do any work in the same employment or otherwise, and that his earning capacity had been practically destroyed.

Dr. Hatchett testified that his examination of the appellee revealed a rather painful condition of the low back region as a result of the fractures of the third and fourth transverse processes of the lumbar spine, and that he thought he would be benefitted by the use of a brace, and that his fractures were healing in good position and that he thought no permanent disability would result from his injury, and that he would be able to resume his usual duties within a period of three or four months. However, Dr. Hatchett further testified that when he examined the appellee on June 30, 1953, he was disabled from performing his usual duties, but that he would be able eventually to resume his regular duties with approximately a fifteen percent permanent disability.

Dr. Blake testified that he examined the appellee on two occasions, namely, December 15, 1953 and April 2,

1954, and that he found that his fractures had solidly healed and that the vertebrae were in good position and alignment; that on his first examination he gave the appellee approximately a forty percent disability, but that on his examination on April 2, 1954, he reduced the disability to ten percent or fifteen percent; that he saw no reason for the appellee to experience pain at the juncture of the muscles with the transverse processes and that he could not account in any way for the appellee not resuming work.

From the foregoing it appears that appellee's disability from a medical standpoint ranged from a ten percent to a fifty percent disability.

■■■ ■ The appellants contend, first, that the orders of the attorney-referee, the Commission, and the circuit court are erroneous in that the proper method of computing the compensation, if any be due the appellee, is to apportion the percentage of permanent partial disability to the number of weeks allowed for total disability, and to pay the appellee at his regular compensation rate for the number of weeks thus determined. The appellants admit that this contention is contrary to the interpretation which we have heretofore given the applicable provisions of the Workmen's Compensation Act, but they argue that such interpretation is manifestly wrong and should be changed. We do not agree. The interpretation is in accordance with the express provisions of the Act and any change therein would have to come through legislative action.

It is clear that the appellee's injury comes within the classification of "other cases" provided for by Section 8(c) (21) of the Act as amended. In this classification, the formula for compensation is "sixty-six and two-thirds per centum (66-2/3%) of the difference between his average weekly wages . . . and his wage-earning capacity thereafter in the same employment or otherwise . . ." In interpreting these provisions of the Act

in the case of Karr v. Armstrong Tire and Rubber Company, 216 Miss. 132, 61 So. 2d 789, the Court, in dealing with the provision in question, said: ''The benefits are figured on a percentage of applicant's average weekly wages at the time of the injury, as compared to his wage earning capacity thereafter in the same employment or otherwise.''

In the case of Elliott v. Ross-Carrier Company, 220 Miss. 86, 70 So. 2d 75, the Court said: ''We think that the Karr case, supra, has definitely determined the interpretation to be placed upon Section 8(c)(21), Chapter 354 of the Laws of 1948, and has definitely determined the formula by which the amount of compensation benefits is to be fixed.''

It is argued by the appellants that this Court has recognized the principle of the apportionment of benefits in the case of Nowlin v. Mississippi Chemical Company, 219 Miss. 873, 70 So. 2d 49. It was pointed out, however, in the case of Elliott v. Ross-Carrier Company, supra, that the case of Nowlin v. Mississippi Chemical Company, supra, dealt with a different provision of the statute where a different formula was required in arriving at the amount of compensation. In fact, the provision involved in the case of Nowlin v. Mississippi Chemical Company, supra, expressly provided for the apportionment of benefits with reference to certain types of injuries, and this case affords no precedent for an apportionment of the benefits for the type of injury suffered by the appellee.

We are accordingly of the opinion that the interpretation heretofore placed upon the applicable provisions of the Act in the Karr case and the case of Elliott v. Ross-Carrier Company, supra, is correct and we reaffirm the same.

 The appellants next contend that the decision of the Commission modifying the findings and order of the attorney-referee are supported by substantial evi-

dence and, therefore, should not be disturbed. We find no substantial evidence in the record supporting the decision of the Commission fixing the earning capacity of the appellee after the injury at eighty-five percent. It is true that the doctors fixed his disability at from ten percent to fifty percent, but it is clear that the doctors in thus fixing his percentage of disability had reference to his disability to the body or functional loss and not to a like percentage in loss of earning capacity. The proof shows that because of the appellee's disability he was unable to earn exceeding $250.00 from the date of his injury to the date of the hearing, a period of nearly two years, thus showing a loss of earning capacity in excess of that found by the attorney-referee. While his earnings after the injury are not necessarily determinative of his earning capacity, they are of evidential value in establishing his earning capacity after the injury in the same employment or otherwise. Elliott v. Ross-Carrier Company, supra.

We think, therefore, that the decision of the Commission in fixing the appellee's earning capacity after the injury at eight-five percent was arbitrary and not supported by substantial evidence, and that the circuit court was correct in reversing the order of the Commission and reinstating the order and the award of the attorney-referee. However, the order of the circuit court should have applied the limitation of $8600 to the compensation benefits awarded. J. F. Crowe Well Servicing Contractor v. Fielder, 80 So. 2d 29.

We are accordingly of the opinion that the judgment of the circuit court should be modified so as to award to the appellee compensation at the rate of $16.00 per week from April 6, 1954, and continuing throughout the period of his permanent partial disability, but not to exceed 450 weeks or $8600, whichever is the lesser amount.

The judgment of the circuit court is therefore affirmed as so modified, and the cause remanded for enforce-

ment by the Commission in accordance with this opinion.

Affirmed as modified and remanded.

*McGehee, C.J.* and *Hall, Lee,* and *Ethridge, JJ.,* concur.