CARLTON, J.,
dissenting:
¶34. I respectfully dissent from the majority’s opinion in this case. As provided by Mississippi Workers’ Compensation Commission Procedural Rule 9(4), Pulliam possessed fifteen days to object to the affidavit at issue after receiving Hud-speth’s notice of intent to use the affidavit to admit Dr. Collipp’s medical report into evidence at the hearing before the AJ.[3] Pulliam failed, however, to timely object to the use of the affidavit to admit the attached medical reports[4] into evidence as required by Procedural Rule 9(4), and she thus failed to preserve the issue for appellate review.[5] Therefore, our standard of appellate review is limited to whether the Commission’s decision is supported by the evidence or whether the Commission’s decision erroneously applied the law. See Ga. Pac. Corp. v. Taplin, 586 So.2d 823, 826 (Miss.1991); see also Raytheon Aerospace Support Servs. v. Miller, 861 So.2d 330, 335 (¶ 9) (Miss.2003) (finding that the Court of Appeals exceeded its permissible scope of review and that “the courts may interfere only where the agency action is arbitrary and capricious”).
¶ 35. The AJ’s opinion in this case reflected that Pulliam failed to object within fifteen days of receipt of notice and in advance of the hearing as required by Procedural Rule 9(4), and instead, she waited until the hearing to object. The AJ ruled on the objection raised by Pulliam at the hearing, and the AJ set forth in her written opinion that the report was properly offered and admitted into evidence. As acknowledged by Mississippi Workers’ Compensation Law § 6.33:
In workers’ compensation matters, there is no hard and fast hearsay rule. There are no jurors’ ears to protect from untrustworthy testimony, and the Commission and administrative judges have the experience and expertise to evaluate the reliability and probative value of the various kinds of evidence that arise in workers’ compensation matters.
John R. Bradley & Linda A. Thompson, Mississippi Workers’ Compensation Law § 6.33 (2013). The Commission is not bound by the formal rules of evidence that govern proceedings in courts of law. 7d[6] *874 In the case before us, the AJ clearly possessed the discretion and flexibility to determine whether the records at issue were properly offered and admitted at the hearing. This is particularly true in light of Pulliam’s failure to timely object in advance of the hearing in accordance with Procedural Rule 9(4). We must therefore review the record to determine'whether the decision of the Commission is supported by the evidence or whether the Commission erroneously applied the law. See Ga. Pac. Corp., 586 So.2d at 826; see also Walker Mfg. Co. v. Butler, 740 So.2d 315, 323 (¶¶ 37-39) (Miss.Ct.App.1998) (finding that the admission of an unsworn doctor’s note was not error and caused no substantial prejudice and citing the proposition that “[ejrrors along technical lines in the conduct of the hearing before the [Cjommission are not sufficient on review to cause a reversal unless substantial prejudice can be shown”) (citation omitted).
¶ 36. In applying our limited scope of review to this case, I acknowledge that the Commission, as an executive administrative agency, promulgates general rules as well as procedural rules. In the present case, Pulliam claims error resulting from a procedural rule of the Commission and not a general rule. In determining whether the Commission erroneously applied the law in this case, we must recognize that, with respect to the Commission’s procedural rules, the Commission possesses broad discretionary authority to relax, import flexibility to, and deviate from its own procedural rules “where in its judgment such is necessary to implement and effect its charge under the Mississippi Workers’ Compensation Act.” Delta Drilling Co. v. Cannette, 489 So.2d 1378, 1380 (Miss.1986).[7] As the Mississippi Supreme Court stated in Delta Drilling Co., “It is a rare day when we will reverse the Commission for an action taken in the implementation and enforcement of its own procedural rules.” Delta Drilling Co., 489 So.2d at 1380-81. I respectfully submit that the record in the present case reflects no basis for such a rare occasion.[8]
¶ 37. I will now turn to the facts of the case that are relevant to this analysis and that support the decision by the AJ and the Commission. The record reflects that Pulliam received sufficient advance pre-hearing notice of the affidavit at issue and of Hudspeth’s intent to use the affidavit to admit the attached medical records, which included Dr. Collipp’s report, at the hearing before the AJ.[9] In accordance with *875 the goals and principles underlying Procedural Rule 9, this prehearing notice by Hudspeth provided Pulliam with ample opportunity to object to the affidavit prior to the hearing. The prehearing notice reflected the use of the affidavit to admit Dr. Collipp’s medical report and resulted in no substantial prejudice to Pulliam.[10] The sufficiency of the prehearing notice was reflected in Hudspeth’s prehearing statements, the medical records and affidavit filed therewith, and the procedural history leading to the AJ’s order for an employer’s medical evaluation (EME) of Pulliam. Dr. Davis first performed the EME but then referred Pulliam to Dr. Collipp, a physical-medicine specialist in his practice, for complaints outside the scope of Dr. Davis’s expertise. Dr. Collipp performed a onetime EME of Pulliam by order of the AJ after Hudspeth filed a motion on October 20, 2008, to compel the EME. Pulliam objected to the examination, but on November 8, 2008, the AJ ordered Pulliam to attend the EME with Dr. Collipp. On December 30, 2008, Hudspeth filed a motion for continuance of the hearing on the merits since Dr. Collipp’s EME had not yet been received and was necessary to determine whether a vocational expert would be retained and a functional capaeity evaluation (FCE) would be performed.[11] Over Pulliam’s objection, the AJ granted Hudspeth’s motion and delayed the hearing.
¶ 38. The record reflects that Pulliam enjoyed far more than the thirty-day advance notice required by Mississippi Workers’ Compensation Commission Procedural Rule 9(1) of Hudspeth’s intent to use the affidavit to admit Dr. Collipp’s medical report in lieu of his live testimony. The AJ held the hearing on the merits and received evidence on March 24, 2011. With respect to the sufficiency of prehear-ing notice, the record shows that Pulliam first received notice of Hudspeth’s intent to admit Dr. Collipp’s report several years earlier on March 6, 2009, from Hudspeth’s amended prehearing statement that contained Dr. Collipp’s report and opinions.[12] The amended prehearing statement cited the report and opinions of Dr. Collipp and attached a copy of his report as an exhibit. Hudspeth then filed a second amended prehearing statement on June 17, 2009, which cited the opinions of Dr. Collipp. Hudspeth also filed the medical-records affidavit for Dr. Davis’s records, which contained Dr. Collipp’s medical report reflecting the evaluation referred to him by Dr. Davis and ordered by the AJ.[13] Pul- *876 liam possessed ample opportunity to cross-examine or depose Dr. Collipp regarding his medical opinions, but she chose not to do so.
¶ 39. As permitted by the Commission’s procedural rules, Pulliam could have conducted a cross-examination deposition of Dr. Collipp, or she could have chosen to have him subpoenaed to testify at the hearing before the AJ.[14] Despite having prehearing notice for over a year of Hud-speth’s intent to use the affidavit to admit Dr. Collipp’s report with Dr. Davis’s records, and despite having prehearing notice for almost two years of the contents of Dr. Collipp’s EME report, Pulliam still failed to file her objection in advance of the hearing as required by Procedural Rule 9(4). As acknowledged, Pulliam failed to raise any objection to the affidavit until the day of the hearing. Logically, a timely objection filed pursuant to Procedural Rule 9(4) provides an opportunity for deficiencies in the affidavit to be cured. The record reflects that Pulliam received sufficient advance notice and that the AJ’s decision to admit Dr. Collipp’s report was consistent with the Commission’s procedural rules and the procedural-due-process principles set forth therein.
¶40. As stated, in my view, Pulliam failed to timely object to the use of the affidavit to admit Dr. Collipp’s report. However, even if Pulliam’s claim of error had been preserved, I submit that Pul-liam’s claim of reversible error would still lack merit under the Commission’s relaxed procedural rules and in light of the facts of this case. Hudspeth’s motion to compel Pulliam to undergo an EME with Dr. Col-lipp reflected that Dr. Davis previously recommended that Pulliam be medically evaluated by Dr. Collipp, a physical-medicine specialist. The AJ also acknowledged that Dr. Davis first conducted an EME of Pulliam on April 2, 2008. The AJ’s opinion further acknowledged Dr. Davis’s opinion that some of Pulliam’s complaints exceeded the scope of his medical practice and, as to those matters and any related opinions, that Dr. Davis would defer to a physical-medicine specialist. An EME as to those complaints was therefore conducted by Dr. Collipp, a physical-medicine specialist in Dr. Davis’s own medical practice. Clearly, Dr. Davis’s records reflected that Pulliam required referral to a physical-medicine specialist for those issues pertaining to her ongoing cervical-spine pain complaints. Dr. Davis’s report concluded with a recommendation that Pulliam be evaluated by a physical-medicine doctor since her initial complaints of ongoing neck pain began a full eight months after her injury. Dr. Davis’s report also reflected his belief that Pulliam’s cervical-spine pain was not causally related to her work injury.
¶ 41. Upon the AJ’s order and Dr. Davis’s referral, Dr. Collipp evaluated Pul-liam. Dr. Collipp opined that Pulliam’s lower-back pain was not causally related to her work injury, and he answered the medical-diagnostic question raised by Dr. Davis in his evaluation. The first page of Dr. Collipp’s medical report reflected that he was part of the same practice as Dr. Davis and that Pulliam was referred to him. The first page of Dr. Collipp’s report also acknowledged that the EME in this case was ordered by the AJ. Dr. Collipp signed the last page of his report, which was filed with Hudspeth’s amended pre-hearing statement in March 2009.[15] Hud- *877 speth’s second amended prehearing statement was filed on June 17, 2009. This filing included as a “proposed exhibit” the medical-records affidavit for Dr. Davis’s medical records, which contained Dr. Col-lipp’s report. The affidavit was signed by the medical-records custodian for Dr. Davis’s medical records, and as reflected in the record, both Dr. Davis and Dr. Collipp were members of the same medical group and had the same medical-records custodian.
¶ 42. As previously acknowledged, the record also shows that Dr. Davis performed the initial EME and then recommended that Pulliam be further evaluated by his partner, Dr. Collipp, a physical-medicine and rehabilitation specialist. The referring doctor’s report would logically contain the report or results of the referral recommended by him to complete the diagnostic process, particularly where both the referring physician and the physician receiving the referral practice with the same medical group.[16] The AJ possessed sufficiently broad discretion to determine that the records at issue in this case were properly offered and admitted. However, as acknowledged, the sufficiency of the affidavit is not properly before us on appeal since Pulliam failed to preserve her claim of error by advance objection in accordance with Procedural Rule 9(4) as to the admission of Dr. Collipp’s report via the disputed affidavit. Cf. Riddle, 592 So.2d at 42-43.
¶ 43. Because the record contains sufficient evidence to support the decision by the Commission and by the AJ, I would affirm. I therefore respectfully dissent from the majority’s opinion.
BARNES, ISHEE AND ROBERTS, JJ., JOIN THIS OPINION.

. Mississippi Workers’ Compensation Commission Procedural Rule 8 provides that the rules of evidence are relaxed at evidentiary hearings. Procedural Rule 9(4) provides an objecting party with fifteen days to object after receipt of notice of an intent to use an affidavit to admit medical records. See also Miss.Code Ann. § 71-3-47 (Rev.2011) (providing details for the adjudication of claims before the Commission); Miss.Code Ann. § 71-3-61 (Rev.2011) (stating the Commission’s authority to conduct proceedings).

. The medical reports by Dr. Davis and Dr. Collipp were attached to the affidavit.

. See Binswanger Mirror v. Wright, 947 So.2d 346, 351 (¶ 14) (Miss.Ct.App.2006); see also Sonford Prods. Corp. v. Freels, 495 So.2d 468, 473 (Miss. 1986) (overruled on other grounds) (finding no merit in an argument regarding the reliability of an expert opinion where the argument on appeal was not presented to the AJ).

. Cf. Riddle v. Miss. State Bd. of Pharmacy, 592 So.2d 37, 42-43 (Miss.1991) (holding that the admission of prescribing physicians’ affidavits was not error where the defendant pharmacist had been informed of his procedural-due-process rights); see also Greenwood Utilities v. Williams, 801 So.2d 783, 790 (¶ 23) *874 (Miss.Ct.App.2001) (acknowledging the broad discretion and procedural flexibility that an AJ possesses); Miss.Code Ann. § 71-3-47 ("The [Cjommission shall have full power and authority to determine all questions relating to the payment of claims for compensation!.]”); Miss.Code Ann. § 71-3-55(1) (Rev. 2011) (“In making an investigation or inquiry or conducting a hearing, the [Cjommission shall not be bound by common law or statutory rules of evidence or by technical or formal rules or procedure, except as provided by this chapter!.]”).

.See also Miss. Workers’ Comp. Comm’n P.R. 8; Miss. Workers' Comp. Comm’n P.R. 14 (providing that the Commission or the AJ may allow deviation from the procedural rules).

. See Flowers v. Panola Mills Inc., 749 So.2d 1104, 1105 (¶ 8) (Miss.Ct.App.1999) ("This Court will reverse the decision of the Commission only if it is a product of manifest error, an abuse of discretion, and does not enjoy support in the substantial evidence.”) (citation omitted).

. See Miss. Workers' Comp. Comm'n P.R. 9(1) ("The party wishing to introduce ... medical records shall notify opposing parties and the Commission by written notice served at least thirty (30) days prior to the scheduled hearing. The prehearing statement may suffice as notification under this rule.”); see also Jeffrey Jackson & Mary Miller, 9 Encyclopedia of Mississippi Law § 76:141 (2002) (providing a discussion of the introduction of *875 medical records and affidavits into evidence at a Commission hearing).

. See Walker Mfg. Co., 740 So.2d at 323 (¶¶ 37-39).

. See Miss.Code Ann. § 71-3-15(1) (Rev. 2011) (stating the purpose of an EME); Jeffrey Jackson & Mary Miller, 9 Encyclopedia of Mississippi Law § 76:107 (2002) ("The employer has the right to have the worker examined by a physician for the purpose of evaluating the extent of disability or need for medical treatment.”).

. See Miss.Code Ann. § 71-3-15(6) (Rev. 2011) ("All findings pertaining to a second opinion medical examination, at the instance of the employer!,] shall be reported as herein required within fourteen (14) days of the examination. ... All findings pertaining to an independent medical examination by order of the [Commission shall be reported as provided in the order for such examination.”).

.See Miss. Workers’ Comp. Comm’n P.R. 5 (providing that prehearing statements are required before a matter can be set for a hearing on the merits and must be completed with all documents attached); Miss. Workers' Comp. Comm’n P.R. 7 (stating that all cases shall be completed at one hearing before the AJ, and all evidence shall be introduced at such hearing; the Commission possesses discretion to allow additional evidence to be thereafter presented to the full Commission).

. See Miss. Workers’ Comp. Comm'n P.R. 9(5); Jackson & Miller, at § 76:141.

. Dr. Collipp's EME report was also referenced in Hudspeth’s motion for a status conference and in the third and fourth pre-hearing statements. Hudspeth argues that the EME had been produced to Pulliam's attorney and filed with the Commission on multiple occasions, and such an argument *877 is consistent with Mississippi Workers’ Compensation Commission Procedural Rule 20, which requires copies of pleadings to be sent to each party once the case is controverted. After Hudspeth completed its pre-hearing statements, Pulliam requested additional continuances, and the AJ held a hearing on the merits on March 24, 2011. The record therefore reflects that Pulliam possessed approximately two years of pre-hearing notice of the affidavit and its intended use to admit Dr. Collipp’s report.

. Cf Legacy Hall of Fame Inc. v. Transp. Trailer Serv., Inc., 2012-CA-01978-COA, 139 So.3d 105, 107, 2014 WL 211718, at *3 (¶ 16) (Miss.Ct.App. Jan. 21, 2014) (acknowledging that the treating physician’s medical records, which were admitted into evidence, included a consultation report from another physician).